

**FILED**
**Apr 20, 2026**
**12:26 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**


# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| **MATTHEW SMITH**<br>　　**Employee,** | **Docket No. 2025-05-5304** |
| **v.** | |
| **COCA COLA CONSOLIDATED, INC.**<br>　　**Employer,** | **State File No. 15567-2025,** |
| **and** | |
| **INDEMNITY INS. CO. OF N.A.**<br>　　**Carrier.** | **Judge Robert Durham** |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

Mr. Smith asked Coca-Cola to authorize the neck surgery recommended by Dr. John Burleson and pay additional temporary disability benefits. Coca Cola denied the surgery and temporary benefits based on lack of medical causation. For the following reasons, the Court orders Coca Cola to authorize the surgery and pay additional temporary disability benefits.

### History of Claim

In late January 2025, Mr. Smith began working for Coca Cola as a mechanic, repairing and maintaining machines at the plant. His job required strenuous physical activity with constant walking, stooping, kneeling and working in cramped spaces. He testified that before his injury, he had no problems performing these activities.

On February 26, Mr. Smith slipped in an oil puddle while walking sideways between a machine and some oil drums. He fell backwards against the barrels, striking his back. He was caught between the barrels and the machine but did not hit the ground.

Mr. Smith testified that he experienced immediate pain in his right pelvis and

hip.  At the hearing, he illustrated his pain began just above his right buttock. The fall bruised his lower back, but no other body parts. He did not experience any pain or numbness in his neck or his arms.

After informing his supervisor, he completed his shift and went home.  The next day, his pain was so severe that Coca Cola authorized treatment at a walk-in clinic.  Mr. Smith's pain, weakness, and numbness continued to worsen.  Coca Cola then authorized treatment with orthopedist, Dr. Matthew Sarb.

Dr. Sarb obtained an MRI that showed moderate degenerative changes without disc protrusion as well as moderate arthritis in both hips.  However, Dr. Sarb did not think that Mr. Smith's symptoms originated in his hip.  He recommended a neurosurgical consultation, and Mr. Smith chose Dr. John Burleson from a panel.

Mr. Smith saw Dr. Burleson in June 2025.  He described intense pain in his right lower back that radiated to his right buttock and thigh.  He was experiencing weakness and numbness in his right leg and foot.  He had difficulty walking, balance issues, and spasms that prevented him from driving.

Mr. Smith began physical therapy, but while at a session, he felt an "electric shock" go through his body that caused him to fall off the bed.  At that point, Dr. Burleson felt that Mr. Smith's symptoms might be coming from his cervical spine.

Dr. Burleson ordered an MRI that showed a cervical fusion at C5-6, which Mr. Smith said resulted from a 2013 work injury.  However, Dr. Burleson also noted that it "very clearly" showed a "C6-7 acute disc herniation" which was causing "central severe stenosis with pressure on his spinal cord."  The C6-C7 level further had "some buckling of the ligamentum flavum creating a pincer effect on his spinal cord."

Dr. Burleson explained that the herniation looked acute, there was cord compression, and the findings were consistent with Mr. Smith's symptoms.  Based on the MRI and Mr. Smith's symptoms, Dr. Burleson recommended a C6-C7 cervical fusion.

Regarding causation, Dr. Burleson acknowledged Mr. Smith's earlier fusion but said, "Given the acute nature of his injury here as well as the symptoms for which he had afterwards and the fact that he is myelopathic with an acute disc herniation here leads me to believe that greater than 50% of his need for a fusion surgery is related to his work accident."

Coca Cola denied the surgery and on October 1 sent Mr. Smith to orthopedist Ryan Snowden for evaluation. Mr. Smith complained of low back pain that radiated into his right hip and leg as well as trouble standing and walking. Dr. Snowden also noted that Mr. Smith now complained of neck pain. Examination revealed normal strength and symmetrical reflexes in his upper extremities. However, Mr. Smith did exhibit abnormal lower extremity reflexes as well as a limp and difficulty walking heel-to-toe.

Dr. Snowden believed that Mr. Smith's symptoms were due to several conditions. He said the work injury exacerbated Mr. Smith's pre-existing low back and right hip pain. He did not find an acute disc herniation or stenosis attributable to the work injury, and believed the symptoms warranted non-surgical management.

As for the cervical spine, Dr. Snowden noted that Mr. Smith had "progressive symptomatic adjacent degeneration" with spinal cord compression at C6-C7 due to his 2013 C5-C6 fusion. He noted that Mr. Smith did not complain of neck pain until more than five months after the work injury. Thus, he did not believe Mr. Smith's cervical condition was related to his work injury.

In December, Mr. Smith's counsel sent Dr. Snowden's report to Dr. Burleson along with several questions. Dr. Burleson confirmed that Mr. Smith needed a C6-C7 discectomy and fusion due to spinal cord compression causing his lower extremity symptoms. He related the need for surgery to Mr. Smith's fall at work.

He conceded that the 2013 fusion made the C6-C7 level more vulnerable, but the sudden onset of myelopathic symptoms after the accident led him to relate the injury to employment. He further explained that Mr. Smith's symptoms might not include neck or arm pain since most of the pressure would be on nerves stemming from the thoracic and lumbar spine. Dr. Burleson determined that the myelopathy created a "surgical urgency" since delay could lead to increased and/or permanent symptoms.

Mr. Smith testified at the hearing that he continues to have severe pain from his right lower back through his right leg and spasms in his right leg and foot. He cannot walk or stand for long and requires his wife's assistance. He testified that certain activities or positions, such as brushing his teeth, can result in a burst of intense pain.

He also testified that after he healed from his cervical fusion in 2013 until his 2025 fall, he did not have any neck, low back, or lower extremity complaints, or physical limitations.

Mr. Smith testified that when he first got restrictions, Coca Cola offered him office work. His restrictions were no lifting more than 20 pounds, no squatting, kneeling or walking on uneven terrain. However, his supervisors eventually asked him to return to maintenance, although they said he could ask for help if needed. But Mr. Smith testified that as his symptoms progressed, he could not walk up the sloped floor of the plant or even walk to the factory from the parking lot.

He said he talked to his supervisors and told them he couldn't do the job. Coca Cola terminated him on May 23 for absenteeism. When he asked about it, Coca Cola said they thought he had quit, even though he still had tools in the plant. On July 14, Dr. Burleson took Mr. Smith completely off work until post-surgery.

The parties did not submit an accurate wage statement given that Mr. Smith only worked a few weeks before his injury. They agreed to obtain a comparative wage statement to determine Mr. Smith's average weekly wage and supplement the record with a late-filed exhibit.

**Law and Analysis**

To obtain his requested benefits, Mr. Smith must show a likelihood of prevailing at a hearing on the merits that he is entitled to cervical fusion surgery and additional temporary disability benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2025).

To establish entitlement, Mr. Brown must show he is likely to prove: (1) a work-related injury; (2) that surgery is reasonable and necessary for treating his injury; and (3) he has yet to reach maximum medical improvement and has been unable to work since last receiving temporary disability benefits. The Court will address each issue in turn.

To prove a work-related injury, Mr. Smith must show that he sustained an injury arising primarily out of and in the course of employment. *Id*. § 50-6-102(14)(A). Dr. Burleson, the authorized physician, testified to a reasonable degree of medical certainty that Mr. Smith's condition arose primarily from his work injury. As the authorized physician, Dr. Burleson's opinion is presumed correct. *Id*. § 50-6-102(12)(E).

However, Dr. Snowden offered a different opinion. He believed that Mr. Smith's condition existed primarily due to degeneration caused by the fusion at C5-C6. He did not see any connection between the cervical condition and the work injury.

When confronted with conflicting opinions, the Court has discretion to

determine which opinion to accept. *Patterson v. Huff & Puff Trucking*, 2018 TN Wrk. Comp. App. Bd. LEXIS 33, at *9 (July 6, 2018). The Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

Here, neither party produced any evidence as to either doctor's qualifications, so neither doctor has the edge on this factor.

As to their examinations, Dr. Burleson is Mr. Smith's authorized physician, which means his opinion as to the reasonableness and necessity of recommended treatment is presumed correct. *Id*. § 50-6-204(H). Dr. Burleson also treated Mr. Smith on more than one occasion as opposed to Dr. Snowden, who only saw Mr. Smith once. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Id.* at 677. The examinations weigh in favor of Dr. Burleson.

Finally, the Court considers the information available to each doctor and the weight they afforded it. Although both doctors had the same information, Dr. Snowden did not give many details to bolster his assertion that the work injury was not related to the spinal cord compression. He did not seem to consider the timing of the onset of symptoms, other than noting Mr. Smith did not complain of neck pain until his evaluation. Dr. Snowden did not clearly express whether he attributed Mr. Smith's low back and right leg symptoms to the cervical myelopathy or some other cause. Finally, Dr. Snowden did not refute Dr. Burleson's opinion that the cervical spine compression created a "surgical urgency" to minimize further damage.

On the other hand, Dr. Burleson provided a more in-depth explanation for his opinion that the C6-C7 compression is causing Mr. Smith's symptoms and that the work injury necessitated cervical fusion. He explained that cord compression at the C6-7 level affects nerves that control the lower part of the body. He also cited the immediate onset of symptoms as evidence that the work injury caused the compression. He further made clear that Mr. Smith needs surgery to relieve the pressure on the spinal cord as soon as possible to minimize damage. The Court finds this explanation and the weight given to the information at hand lends credibility to Dr. Burleson's opinion.

After weighing all the evidence, the Court finds that Coca Cola failed to overcome the presumption given to Dr. Burleson's opinions. Mr. Smith has proven

he is likely to prevail on entitlement to surgery, and Coca Cola must authorize the recommended C6-7 fusion.

Regarding temporary total disability benefits, Mr. Smith must show the duration of his work-related inability to work. *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). On July 14, 2025, Dr. Burleson took Mr. Smith off work until after his surgery. Given that he has yet to undergo surgery, the Court holds that Mr. Smith is entitled to temporary disability benefits from July 14 through the present and continuing until he reaches maximum medical improvement from his surgery or returns to work.

As to temporary partial disability benefits before July 14, Mr. Smith was assigned restrictions and terminated on May 23, 2025, for absenteeism. He did not provide sufficient testimony about communications with Coca Cola regarding accommodating his restrictions. Without further evidence, the Court holds that Mr. Smith has not established he is likely to prevail on temporary partial disability benefits from May 23 through July 13.

IT IS ORDERED.

1. Coca Cola shall authorize and pay for Dr. Burleson to perform the recommended fusion at C6-7.

2. Coca Cola shall pay Mr. Smith past temporary total disability benefits from July 14, 2025, through the present at a compensation rate to be determined by the parties. Should the parties fail to agree, they shall file a joint motion asking the Court to determine Mr. Smith's average weekly wage. Mr. Smith's attorney is entitled to 20% attorney's fees from the past temporary total disability benefits owed. Coca Cola shall continue to pay Mr. Smith's temporary total disability benefits until he reaches maximum medical improvement or is able to return to work. Mr. Smith's request for temporary partial disability benefits is denied at this time.

3. This case is set for a Scheduling Hearing on **June 1, 2026**, at **2:00 p.m. Central Time**. The parties must call 615-253-0010 or 855-689-9049 to participate. Failure to call might result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur by seven business days of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

ENTERED April 20, 2026.

_____

**JUDGE ROBERT DURHAM**
**Court of Workers' Compensation Claims**

**APPENDIX**

<u>Exhibits</u>:
1. Documents attached to Petition for Benefit Determination
2. Causation letter from Dr. Burleson
3. Mr. Smith's responses to interrogatories
4. Dr. Snowden's independent medical evaluation
5. Mr. Smith's affidavit
6. Collective medical records filed by Mr. Smith

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on April 20, 2026.

| Name | Reg. Mail | Cert. Mail | Email | Service sent to: |
|---|---|---|---|---|
| Jill Draughon | | | X | jdraughon@hughesandcoleman.com |
| Garrett Franklyn | | | X | gpfranklyn@mijs.com |

_____

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the
Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-
stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*